UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Felicia M. Desimini</u>

   v.                                                 Civil No. 14-cv-112-JD
                                                        Opinion No. 2015 DNH 116
<u>John F. Durkin, Jr. and</u>
<u>Wilson, Bush, Durkin & Keefe, PC</u>


O R D E R

Felicia M. Desimini brings claims against her former attorney, John F. Durkin, Jr., and his law firm, Wilson, Bush, Durkin & Keefe, PC that arose from Durkin's representation of Desimini during her divorce proceedings. The defendants move for summary judgment on the ground that Desimini lacks expert opinion evidence to support the causation element of her legal malpractice claim. Desimini objects, contending that her two experts provide sufficient opinions on causation to support her legal malpractice claim.[1]

Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the

---

[1] In addition to legal malpractice, Count I, Desimini alleges claims of negligent misrepresentation, Count II, and "Superior Respondeat Breach of Fiduciary Duties Legal Malpractice," Count III.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Santangelo v. New York Life Ins. Co., --- F.3d ---, 2015 WL 1534145, at *2 (1st Cir. Apr. 6, 2015). "A genuine issue is one that can be resolved in favor of either party, and a material fact is one which has the potential of affecting the outcome of the case." Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 223 (1st Cir. 2013) (internal quotation marks omitted). In deciding a motion for summary judgment, the court draws all reasonable factual inferences in favor of the nonmovant. Kenney v. Floyd, 700 F.3d 604, 608 (1st Cir. 2012).

Background

The defendants provide few facts in support of their motion. In three paragraphs, they briefly cite Desimini's experts' reports and the deposition testimony of Attorney Kelly Dowd, one of the experts, to show that Desmini lacks opinions on damages and causation. Desimini does not provide a factual statement but cites to the opinions provided by her experts. Therefore, the background information is taken from Desimini's experts' reports, which are cited by both parties.

Desimini formerly was married to Ronald Menard. In November of 2008, Desimini hired Durkin to represent her in divorce proceedings. She sought a divorce based on fault

grounds due to Menard's extra-marital affair.  Durkin, however, filed the divorce on alternative grounds of fault and no-fault, irreconcilable differences.  As part of the standing orders issued in divorce cases under RSA 458:16-b, the court imposed a restraining order on both parties to prevent them from disposing of any property.

In 2006, before the divorce proceedings began, Menard had an IRA account with a balance of approximately $1.8 million.  On February 3, 2010, Menard represented that the IRA had diminished to $390,000, and by October 20, 2010, the value was $266,000.  Papers filed in the divorce action indicated that Menard was making withdrawals from the IRA account of $20,000 each month.  Tax records for 2009 show that $422,000 was withdrawn during that tax year, and tax returns for 2010 show that $260,000 was withdrawn during that tax year.  Those withdrawals were made during the time the divorce was pending and the restraining order was in effect.

Desimini asked Durkin to obtain information about Menard's businesses, the value of the retirement accounts, how investments were being spent, and what money Menard had given to his girlfriend.  Although Durkin reassured Desimini that he was taking care of those matters, he did not pursue them.

In May of 2009, Desimini became aware that Menard had withdrawn large sums of money from the IRA account in 2008 and told Durkin she was concerned.  Durkin did not move for contempt of the restraining order or seek an order to require Menard to pay back the amounts taken.  Durkin also did not obtain financial information to determine how much had been taken from the IRA account.  In addition, although Menard had interests in several business entities, Durkin did not obtain Menard's financial records.

Counsel attended mediation in July of 2010 and arrived at a proposed settlement stipulation.  Durkin did not advise Desimini about the methods of asset division and valuation.  Despite the lack of information about Menard's financial resources, Durkin advised Desimini to sign a divorce settlement stipulation in October of 2010, which she did.

Among other things, Durkin did not advise Desimini about the tax consequences of Menard's withdrawals from the IRA accounts.  Soon after she agreed to the settlement stipulation, the IRS notified Desimini that it intended to levy against her in the amount of $84,000.  In addition, Menard did not make payments on the home equity line of credit and that property is now facing foreclosure.

When Desimini contacted Durkin in July of 2011, he advised her that he had "purged" her file and had destroyed his records pertaining to her divorce. He later provided documents that he obtained from reconstructing the file. Desimini then reopened her divorce case, which resulted in an additional property award in her favor. With respect to the IRA account withdrawals, however, the court found that Desimini and her attorney knew that was happening and did nothing to prevent the withdrawals.

Attorney Jennifer Sargent gave her opinion, as an expert on behalf of Desimini, that Durkin's representation during the divorce proceeding violated four of the New Hampshire Rules of Professional Conduct. Attorney Kelly Dowd, also an expert for Desimini, gave his opinion that Durkin's conduct violated the standard of care for divorce practice in New Hampshire. Specifically, Dowd stated that Durkin should have moved for contempt to stop Menard's withdrawals from the IRA account which probably would have caused the withdrawals to be suspended, leading to an increased amount in the marital estate at the time of settlement. Dowd also faulted Durkin for failing to have Menard's obligations secured by assets, which would have decreased the risk to Desimini that Menard would not pay. Dowd also stated that Durkin's failure to act resulted in an inequitable settlement which prolonged the litigation.

Discussion

Although the defendants' motion is titled "Motion for Summary Judgment for Lack of Competent Expert Testimony Regarding Causation," the motion focuses on the calculation of damages. The defendants move for summary judgment on the malpractice claim, Count I, but do not address Desimini's claims for negligent misrepresentation, Count II, and "superior respondeat breach of fiduciary duties legal malpractice," Count III. Desimini objects to the motion, arguing that Sargent and Dowd provide sufficient opinion evidence to support her legal malpractice claim.

A.  Causation

Legal malpractice is negligence by an attorney in representing a client. Yager v. Clauson, 166 N.H. 570, 573 (2014). The elements of a legal malpractice claim are "(1) that an attorney-client relationship existed, which placed a duty upon the attorney to exercise reasonable professional care, skill and knowledge in providing legal services to that client; (2) a breach of that duty; and (3) resultant harm legally caused by that breach." Estate of Sicotte v. Lubin & Meyer, P.C., 157 N.H. 670, 674 (2008). In most cases, expert opinion testimony is necessary to inform the jury of the standard of care, to show

a breach of the standard of care, and to establish that the breach caused the plaintiff harm.  Yager, 166 N.H. at 573.

Proof of causation requires evidence to show a probable link between the negligence and the injury.  Beckles v. Madden, 160 N.H. 118, 124 (2010).  The defendant's negligent conduct need not be the sole cause of the injury, however, but it must have caused or contributed to cause the injury.  Id.  "This standard is satisfied if the evidence shows with reasonable probability, not mathematical certainty, that but for the defendant's negligence, the harm would not have occurred."  Id.

In the context of legal malpractice, a plaintiff must show with reasonable probability that the outcome would have been better but for the attorney's negligent representation.  Pike v. Mullikin, 158 N.H. 267, 272 (2009); Sicotte, 157 N.H. at 674-75.  That is, "the trier of fact must be able to determine what result would have occurred if the attorney had not been negligent."  Carbone v. Tierney, 151 N.H. 521, 528 (2004).

Dowd provided his opinion that if Durkin had filed a contempt motion to stop Menard's withdrawals from the IRA account, "it is probable that the withdrawals would have been suspended, at least on a temporary basis, and/or substantially reduced, increasing the total amount of the marital estate at the time of the settlement or final hearing."  He also stated

that an order reducing or suspending the withdrawals would have put pressure on Menard "to make favorable concessions on the property settlement in order to use assets freely in the future." Dowd further stated that Durkin should have investigated Menard's business interests so that he could challenge the withdrawals from the IRA account if the transfers to his businesses were fraudulent. As to the tax consequences of the IRA account withdrawals for purposes of the settlement, Dowd acknowledged that Desimini successfully negotiated with the IRS but gave his opinion that Durkin's actions created problems in his relationship with Desimini.

Dowd explained that "[h]ad Durkin filed a motion for contempt to prevent the withdrawals from the IRA, it is probable that the final property settlement made on behalf of Ms. Desimini would have been secured by hard assets, rather than what appear to be unsecured promises to pay." The value of the security, Dowd continued, is that even if the settlement were not any larger, Desimini would have assets to back up Menard's obligations. That security was important because of Menard's health and financial problems.

As such, Dowd provides opinions that sufficiently link Durkin's alleged breaches of his duties to harm experienced by Desimini to survive summary judgment.

B.  Damages

The defendants assert that neither of Desimini's experts provides opinions on monetary loss, and therefore Desimini cannot prove her legal malpractice claim. "The law does not require that damages be calculated with mathematical certainty; the method used need not be more than an approximation." Victor Virgin Constr. Corp. v. N.H. Dep't of Trans., 165 N.H. 242, 245 (2013). In addition, the issue of proof of damages was addressed in the court's order issued on May 12, 2015, document no. 61.

Because of the brevity and conclusory nature of the defendant's motion, it is not clear what proof of damages they were expecting and have not received.[2] In addition, Dowd's report includes amounts that Menard withdrew from the IRA account and the resulting lower balances. The defendants have not shown that Desimini will be unable to prove her damages for purposes of her legal malpractice claim.

---

[2] As such, the defendants have not sufficiently developed their argument about damages to allow review. See Coons v. Indus. Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("district court is free to disregard arguments that are not adequately developed").

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment (document no. 44) is denied.

SO ORDERED.

_____
Joseph DiClerico, Jr.
United States District Judge

June 8, 2015

cc: Felicia M. Desimini, Esq.
    Janet Elizabeth Dutcher, Esq.
    Jeffrey H. Karlin, Esq.
    Marshal V. Kazarosian, Esq.
    Joseph Gardner Mattson, Esq.